```
1                      UNITED STATES DISTRICT COURT
                       SOUTHERN DISTRICT OF FLORIDA
2
                        CASE NO. 23-CR-20036-KMM-1
3
     UNITED STATES OF AMERICA,
4                                          Miami, Florida
                   Plaintiff(s),
5                                          April 25, 2023
           vs.
6
     DANIELA RENDON,
7
                   Defendant(s).      Pages 1 - 28
8    ------------------------------------------------------------

9                             PLEA HEARING
                  TRANSCRIBED FROM DIGITAL AUDIO RECORDING
10            BEFORE THE HONORABLE LAUREN FLEISCHER LOUIS
                   UNITED STATES MAGISTRATE JUDGE
11
     APPEARANCES:
12
     FOR THE PLAINTIFF(S):   STEFAN DIAZ ESPINOSA, ESQ.
13                           UNITED STATES ATTORNEY'S OFFICE
                             99 N.E. 4th Street
14                           Miami, FL 33132
                             954-660-5774
15                           stefan.diaz.espinosa@usdoj.gov

16
     FOR THE DEFENDANT(S):   ROBERT MANDELL, ESQ.
17                           Mandell Law, P.A.
                             189 S. Orange Ave
18                           Orlando, FL 32801
                             407-956-1180
19                           rmandell@fightforyou.org

20

21   TRANSCRIBED BY:         Joanne Mancari, RPR, CRR, CSR
                             Court Reporter
22                           jemancari@gmail.com

23

24

25
```

1   Thereupon,

2   the following proceedings were held:

3         THE DEPUTY CLERK:  Calling case No. 23 20036,

4   criminal, Judge Moore.  United States v. Daniela Rendon.

5         Counsel, would you please note your appearances for

6   the record.

7         MR. DIAZ ESPINOSA:  Good afternoon, your Honor.

8   Stefan Diaz Espinosa on behalf of the United States, standing

9   in for Jonathan Bailyn.

10        THE COURT:  Thank you.

11        MR. MANDELL:  Good afternoon, your Honor.  Robert

12   Mandell on behalf of Daniela Rendon, who is present to my left.

13        THE COURT:  OK.  It is my understanding, Mr. Mandell,

14   that your client wishes to change her plea today.  Is that

15   right?

16        MR. MANDELL:  That's correct, your Honor.

17        THE COURT:  OK.  Let me have her sworn.

18        THE DEPUTY CLERK:  Please raise your right hand.

19        Do you solemnly swear or affirm that the testimony you

20   are about to give will be the truth, the whole truth, and

21   nothing but the truth so help you God?

22        THE DEFENDANT:  Yes.

23        THE DEPUTY CLERK:  Thank you.  You can be seated.

24        THE COURT:  Mr. Diaz Espinosa, do I have a signed plea

25   agreement?

```
 1              MR. DIAZ ESPINOSA:  I'm not certain, your Honor.  I do
 2   have with me a copy of the plea agreement and the factual
 3   basis.  I believe those were also emailed to chambers.
 4              THE COURT:  OK, but I need the one with the
 5   defendant's signature.
 6              MR. DIAZ ESPINOSA:  Mr. Mandell, do you have that?
 7              THE COURT:  Mr. Mandell, did your client --
 8              MR. MANDELL:  I can provide my copy.
 9              MR. DIAZ ESPINOSA:  The original, I think.
10              THE COURT:  The copy will be filed with the court of
11   the factual proffer and the plea agreement following the
12   hearing, and I need to go over those with her, if she's, in
13   fact, signed them.
14              MR. MANDELL:  Yes, she has signed them.
15              THE COURT:  Do you need a copy to have with you there
16   at counsel table as well?
17              MR. MANDELL:  We went over it.
18              THE COURT:  I prefer her to have it during the plea.
19              MR. MANDELL:  I'd prefer as well.
20              THE COURT:  I appreciate that you are headed over, but
21   I need the one with the defendant's signature.  So that is what
22   I'm looking for.
23              MR. MANDELL:  It is interesting, the factual basis I
24   have does not have Mr. Bailyn's signature, just my signature
25   and my client's.
```

1          MR. DIAZ ESPINOSA:  Your Honor, mine has all three.

2          THE COURT:  Could I have one with the defendant's

3     signatures, please.

4          MR. DIAZ ESPINOSA:  Yes, ma'am.

5          May I approach?

6          THE COURT:  Yes.

7          OK.  These are copies, but nobody has the originals.

8          MR. DIAZ ESPINOSA:  Your Honor, I can inquire of

9     Jonathan Bailyn.  He might have them.  I'm not certain.

10          MR. MANDELL:  Your Honor, we sent the originals into

11     the U.S. Attorney's Office.

12          THE COURT:  OK.  All right.  Sorry.  Let me back up.

13          Did I have Ms. Rendon sworn?

14          THE DEPUTY CLERK:  Yes, Judge.

15          THE COURT:  All right.  Do you understand, Ms. Rendon,

16     that you are now under oath and that if you answer any of my

17     questions falsely, your answers may later be used against you

18     in another prosecution for perjury or making a false statement?

19          THE DEFENDANT:  Yes, your Honor.

20          THE COURT:  I understand that you're here today

21     because you'd like to change your plea in this case from a plea

22     of not guilty to a plea of guilty.

23          Under the law you cannot change that plea without

24     first getting permission from the court.  I have to determine

25     that your decision to plead guilty is a knowing and voluntary

1    decision supported by an independent basis in fact.  So I'm

2    going to ask you some questions to make sure that you

3    understand what is happening, you know what your options are,

4    you know what rights you'd be giving up if you plead guilty,

5    and you know what the possible penalties and other consequences

6    will be if you plead guilty.  Also, in federal court, you can't

7    plead guilty to something you didn't do.  So I need to make

8    sure that there are facts that support your guilty plea.

9            Do you understand these are the purposes of my

10   questioning?

11           THE DEFENDANT:  Yes, your Honor.

12           THE COURT:  If at any point you want to speak to your

13   attorney before answering one of my questions, let me know and

14   I'll give you time to do so.  Likewise, if I ask you something

15   that you don't understand, will you tell me so I can try to ask

16   it differently or explain it better for you?

17           THE DEFENDANT:  Yes, your Honor.

18           THE COURT:  All right.  Will you start by just telling

19   me your full name.

20           THE DEFENDANT:  Daniela Rendon.

21           THE COURT:  And how old are you?

22           THE DEFENDANT:  31 years old.

23           THE COURT:  Where were you born?

24           THE DEFENDANT:  Colombia.

25           THE COURT:  When did you come to the United States?

```
 1                 THE DEFENDANT:  2015.

 2                 THE COURT:  OK.  Are you a U.S. citizen?

 3                 THE DEFENDANT:  I am a resident.

 4                 THE COURT:  OK.  So are you a citizen of Colombia?

 5                 THE DEFENDANT:  That's correct, your Honor.

 6                 THE COURT:  OK.  Tell me about your education.  How

 7     far did you go in school?

 8                 THE DEFENDANT:  High school.

 9                 THE COURT:  Did you finish high school?

10                 THE DEFENDANT:  I did not, your Honor.

11                 THE COURT:  OK.  What grade did you go to?

12                 THE DEFENDANT:  Tenth grade, your Honor.

13                 THE COURT:  OK.  Was that in Colombia?

14                 THE DEFENDANT:  That was here, your Honor.

15                 THE COURT:  OK.  In Miami?

16                 THE DEFENDANT:  Coral Springs, Florida.

17                 THE COURT:  OK.  Close enough.

18                 All right.  So did you finish tenth grade?

19                 THE DEFENDANT:  Yes, your Honor.

20                 THE COURT:  And then is it safe for me to assume you

21     can read and write?

22                 THE DEFENDANT:  Yes.

23                 THE COURT:  OK.  Ms. Rendon, have you ever been

24     treated for any type of mental illness or an addiction for any

25     type of narcotic drug?
```

1              THE DEFENDANT:  No, your Honor.

2              THE COURT:  And how about now, are you now under the

3     influence of any drugs, alcohol, or other intoxicant that would

4     prevent you from understanding these proceedings?

5              THE DEFENDANT:  No, your Honor.

6              THE COURT:  Have you taken any medicine at all today,

7     even a Tylenol?

8              THE DEFENDANT:  No.

9              THE COURT:  Do you feel like you're thinking clearly

10    and fully understand what's happening?

11             THE DEFENDANT:  Very clear.

12             THE COURT:  Based on my observations of Ms. Rendon and

13    her responses to my questions, I find she is alert and

14    competent to proceed.

15             Ms. Rendon, I'm not the judge who is assigned to your

16    overall case, which means I am not the judge who will sentence

17    you if your guilty plea is accepted.  That judge is Judge

18    Moore.  He's referred this matter to me for today's plea.

19             Because the charges against you are felonies, you have

20    the right to have Judge Moore conduct this change-of-plea

21    hearing.  If you want, you can agree to have me conduct the

22    proceeding.  I am going to ask you the same questions that

23    Judge Moore would ask you.  If I agree that your plea should be

24    accepted, the procedure going forward, including how your

25    sentencing is conducted, will be the same.

```
 1              Did you have a chance to speak to your lawyer about
 2   having me conduct the hearing instead of Judge Moore?
 3              THE DEFENDANT:  Yes, your Honor.
 4              THE COURT:  Understanding that you have the right to
 5   have Judge Moore conduct this hearing, do you agree to have me
 6   do it instead?
 7              THE DEFENDANT:  Yes, your Honor.
 8              THE COURT:  Mr. Espinosa, on behalf of the government,
 9   any objection?
10              MR. DIAZ ESPINOSA:  No objection, your Honor.
11              THE COURT:  OK.  You may also notice I don't have a
12   court reporter in the courtroom and that everything is being
13   transcribed on our DAR or, rather, recorded on our DAR and can
14   be transcribed thereafter.
15              Any objection to me proceeding without a court
16   reporter?
17              MR. DIAZ ESPINOSA:  No objection, your Honor.
18              THE COURT:  Mr. Mandell, same two questions.
19              MR. MANDELL:  No objection, your Honor.
20              THE COURT:  OK.  I find that Ms. Rendon's decision to
21   have me conduct this hearing is a knowing and voluntary
22   decision.
23              Ms. Rendon, have you received a copy of the indictment
24   that is pending against you, that is, the written charges made
25   against you in this case?
```

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  Have you fully discussed those charges and

3    the case in general with your attorney?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Have you had enough time with him to talk

6    about the case?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Did you and your lawyer review the

9    discovery materials, that is, the evidence the government says

10   it would prove the case against you if it went to trial?

11         THE DEFENDANT:  Yes.

12         THE COURT:  Did you and your lawyer discuss whether

13   there were possible defenses to the charges, such as witnesses

14   that you might have called on your behalf?

15         THE DEFENDANT:  Yes.

16         THE COURT:  Are there any questions about the case

17   that you've asked but your lawyer has not answered to your

18   satisfaction or anything you asked him to do that he has not

19   done for you so far?

20         THE DEFENDANT:  There are none.  Everything's clear.

21         THE COURT:  Are you fully satisfied then with your

22   attorney and the advice and representation that he has given

23   you in this case?

24         THE DEFENDANT:  Absolutely.

25         THE COURT:  Ms. Rendon, I have received a copy of a

1   seven-page document entitled Plea Agreement.  It appears to

2   bear your signature on the last page.

3          Did you in fact sign this plea agreement?

4          THE DEFENDANT:  That's correct, your Honor.

5          THE COURT:  And I'll just ask, because I only have a

6   copy for defense counsel to confirm.  Mr. Mandell, that is your

7   signature above the line?

8          MR. MANDELL:  Yes, your Honor.

9          THE COURT:  And when you received it, had Mr. Bailyn

10  also signed it?

11         MR. MANDELL:  Yes, your Honor.

12         THE COURT:  If we don't receive the original, we will

13  just use this copy then for the court file.

14         MR. DIAZ ESPINOSA:  Thank you, your Honor.

15         Ms. Rendon, did you have an opportunity to read and

16  discuss each and every paragraph of the plea agreement with

17  your lawyer before you signed it?

18         THE DEFENDANT:  Yes, your Honor.

19         THE COURT:  Did your lawyer answer any questions that

20  you may have had about the plea agreement?

21         THE DEFENDANT:  All of them.

22         THE COURT:  Do you believe that you fully understand

23  what is in the plea agreement?

24         THE DEFENDANT:  Yes, your Honor.

25         THE COURT:  Paragraph 1 of the plea agreement says

1    that you're agreeing to plead guilty to Count One of the

2    indictment, which charges you with the crime of wire fraud, in

3    violation of Title 18, United States Code, Section 1343.

4            All right.  Now you said you do have a copy of the

5    plea agreement there to go over with her?

6            MR. MANDELL:  Yes, your Honor.

7            THE COURT:  The maximum sentence you could receive if

8    you plead guilty to the count is listed at paragraph 4 of your

9    plea agreement.

10           The penalty that may be imposed for Count One is up to

11   20 years' imprisonment, followed by a term of supervised

12   release of up to three years.  The court may also impose a fine

13   of up to $250,000.

14           Mr. Diaz Espinosa, you may not know, but I think the

15   statute also permits a fine of up to twice the intended gain or

16   loss resulting from the offense.

17           Is there any reason why that wouldn't be applicable

18   here?

19           MR. DIAZ ESPINOSA:  Not that I understand, your Honor,

20   no.

21           THE COURT:  All right.  I want to make sure, Ms.

22   Rendon, that you understand the two alternatives that the court

23   could impose with respect to a fine.  Your plea agreement says

24   that it is up to $250,000, but by statute it could,

25   alternatively, be twice the intended or actual loss or gain

1   from the fraud.

2           Do you understand?

3           THE DEFENDANT:  Yes, your Honor.

4           THE COURT:  There is also, of course, the possibility

5   of forfeiture, and the court will impose a special assessment

6   or court costs of $100 per count which is due and you've agreed

7   to pay at the time of sentencing.

8           Also, if you are not a U.S. citizen, the conviction of

9   this offense could be used to remove you from the United

10  States, deny you citizenship within the United States, and deny

11  admission to the United States in the future.

12          Do you understand the possibility of removal?

13          THE DEFENDANT:  Yes, your Honor.

14          THE COURT:  Supervised release is a period of time

15  after incarceration when you have to comply with the conditions

16  that are set by the court.  During that time you will have to

17  report to a probation officer.

18          Do you understand that if you violate the conditions

19  of your release, you could be given additional time in prison?

20          THE DEFENDANT:  Yes, your Honor.

21          THE COURT:  Do you also understand that parole has

22  been abolished and that if you are sentenced to prison, you

23  will not be released on parole?

24          THE DEFENDANT:  Yes, your Honor.

25          THE COURT:  The court may also order or be required to

1    order under the Mandatory Victims Restitution Act that you make

2    restitution to any victim of the offense.

3           Do you understand the possibility of restitution?

4           THE DEFENDANT:  Yes, your Honor.

5           THE COURT:  I want to emphasize two things about the

6    maximum penalties.

7           First, because the maximum sentence is -- I'm sorry,

8    because the possible sentence is more than a year in prison,

9    you would be pleading guilty to a felony.

10           Do you understand that if your plea is accepted, you

11    will be adjudged guilty of a felony and that adjudication may

12    deprive you of valuable civil rights, such as the right to

13    vote, the right to hold public office, the right to serve on a

14    jury, and the right to possess any kind of firearm?

15           THE DEFENDANT:  Yes, your Honor.

16           THE COURT:  If you hold any professional licenses in

17    the United States, conviction of a felony could cause you to

18    lose those as well.

19           Second, by pleading guilty you are taking the chance

20    that Judge Moore will sentence you to the maximum penalty.  As

21    we sit here today no one knows what the sentence will be, but

22    do you understand that so long as the sentence does not exceed

23    the maximum I just described, you will not be allowed to take

24    back your guilty plea because you are unhappy with the sentence

25    imposed?

```
1              THE DEFENDANT:  Yes, your Honor.

2              THE COURT:  Did you and your lawyer have a chance to

3    talk about how the sentencing guidelines work and how they

4    might apply to your case?

5              THE DEFENDANT:  Yes, your Honor.

6              THE COURT:  Generally speaking, the way the guidelines

7    work are by taking a certain number of points based on the

8    offense conduct and a certain number of points based on your

9    criminal history.  We take those points, we apply them to a

10   grid, and it gives an advisory range of months that Judge Moore

11   has to consider.

12             Do you understand this is generally how the guidelines

13   work?

14             THE DEFENDANT:  Yes, your Honor.

15             THE COURT:  So if your plea is accepted, the probation

16   office will prepare a presentence investigation report for

17   Judge Moore.  Part of that report will be the probation

18   officer's calculation of how the guidelines apply to your case.

19   If you don't agree, you will have a chance to object and have

20   Judge Moore decide who is correct.

21             Paragraph 86 your plea agreement talks about

22   acceptance of responsibility.  Under the sentencing guidelines,

23   a defendant can get points off for accepting responsibility and

24   pleading guilty.  In this paragraph the government's agreeing

25   to recommend that you get up to three points off.
```

1          The government is not required to make the

2   recommendation if you fail to make full, accurate, and complete

3   disclosure to the probation office of all circumstances

4   surrounding the relevant offense conduct or if you are found to

5   have misrepresented any facts to the government prior to

6   entering the plea agreement or if you commit any misconduct

7   after entering into the plea agreement.  So long as you meet

8   those criteria the government is agreeing to recommend that you

9   get those points off.

10          Judge Moore and Probation are not bound by that

11   recommendation.

12          Do you understand that if Judge Moore does not follow

13   the government's recommendation, that will not be grounds to

14   withdraw your plea?

15          THE DEFENDANT:  Yes, your Honor.

16          THE COURT:  The parties have also agreed, at paragraph

17   7 of your plea agreement, to jointly recommend that the court

18   make certain findings and conclusions.  Specifically, that the

19   relevant loss amount resulting from your participation in the

20   offense is $4,400,01 -- I am going to say that again.  4,401 --

21   I will try one more time.  $4,401,290.  This recommendation is

22   not binding on Probation or the court.

23          Do you understand that if Judge Moore does not follow

24   the recommendation that will not be grounds to withdraw your

25   plea?

```
1            THE DEFENDANT:  Yes, your Honor.

2            THE COURT:  The sentencing guidelines are only one of

3     several factors that Judge Moore has to consider in deciding on

4     your sentence.  After considering all the factors, he may

5     impose a sentence that is within the advisory guideline range,

6     above that range, or below that range.  He may impose a

7     sentence that is higher than what you or your lawyer have

8     estimated.

9            What I want to make sure that you understand is that

10    if Judge Moore gives you a sentence that is higher than what

11    you were hoping for, that will not be grounds to withdraw your

12    plea.

13           Do you understand?

14           THE DEFENDANT:  Yes, your Honor.

15           THE COURT:  At paragraph 13 of the plea agreement you

16    have agreed to forfeit your interest to any property that was

17    derived from proceeds traceable to the commission of the

18    offense.  You have agreed to waive any defense to the

19    forfeiture, including constitutional challenges and applicable

20    time limits, and you have also agreed forfeiture of substitute

21    property.

22           Did you discuss these provisions with your attorney?

23           THE DEFENDANT:  Yes, your Honor.

24           THE COURT:  Do you understand the commitment that

25    you're making with respect to forfeiture?
```

```
 1              THE DEFENDANT:  Yes, your Honor.

 2              THE COURT:  You've also agreed at paragraph 16 of the

 3    agreement to the admissibility of the signed factual proffer in

 4    any criminal proceeding if you withdraw from the plea agreement

 5    or otherwise breach it.

 6              Did you discuss this provision with your attorney?

 7              THE DEFENDANT:  Yes, your Honor.

 8              THE COURT:  Do you understand the right that you'd be

 9    giving up to contest the admissibility of the factual proffer

10    in a future criminal proceeding?

11              THE DEFENDANT:  Yes, your Honor.

12              THE COURT:  Your plea agreement also contains what is

13    called an appeal waiver.  If you plead guilty, you cannot

14    appeal the conviction because you are admitting to the guilt,

15    but you could otherwise appeal the sentence that is imposed.

16              What the plea agreement says is that you're agreeing

17    not to appeal the sentence and you would only have an appeal in

18    limited circumstances.  For example, if the government files an

19    appeal or if the sentence imposed is the result of an upward

20    departure or upward variance from the guideline range.

21              Did you discuss this appeal waiver with your attorney?

22              THE DEFENDANT:  Yes, your Honor.

23              THE COURT:  Do you understand what you are giving up?

24              THE DEFENDANT:  Yes, your Honor.

25              THE COURT:  I find the appeal waiver is a knowing,
```

1    voluntary, and fully-informed waiver.

2          Ms. Rendon, the final paragraph of your plea agreement

3    says that there are no other promises or agreements other than

4    what is contained in this written document.  So let me ask you

5    whether the plea agreement in fact represents in its entirety

6    every agreement that you have with the government.

7          THE DEFENDANT:  Yes, your Honor.

8          THE COURT:  Mr. Diaz Espinosa, on behalf of the United

9    States, are there any undisclosed promises or agreements?

10          MR. DIAZ ESPINOSA:  No, your Honor.

11          THE COURT:  Mr. Mandell, same question.

12          MR. MANDELL:  No, your Honor.

13          THE COURT:  Ms. Rendon, has anyone made any promise or

14    assurance to you that is not in the plea agreement to persuade

15    you to accept the plea agreement?

16          THE DEFENDANT:  No, your Honor.

17          THE COURT:  Has anyone threatened you in any way to

18    persuade you to accept the plea agreement?

19          THE DEFENDANT:  No, your Honor.

20          THE COURT:  Are you pleading guilty because you are in

21    fact guilty?

22          THE DEFENDANT:  Yes, your Honor.

23          THE COURT:  Any good time or early release provisions,

24    if they are applicable to your case, are between you and the

25    Bureau of Prisons; they are not part of your plea agreement.

1    So if the Bureau of Prisons requires that you serve the entire

2    sentence, that is a chance you take by entering the plea, and

3    it won't be grounds to withdraw the plea.

4         Do you understand?

5         THE DEFENDANT:  Yes, your Honor.

6         THE COURT:  OK.  I want to go over the rights

7    associated with a trial that you would be giving up.

8         Do you understand that you have the right to plead not

9    guilty to any offense charged against you and to persist in

10   that plea?

11        THE DEFENDANT:  Yes, your Honor.

12        THE COURT:  Do you understand that you have the right

13   to a trial by jury?

14        THE DEFENDANT:  Yes, your Honor.

15        THE COURT:  At trial you would be presumed to be

16   innocent and the government would have to prove your guilt

17   beyond a reasonable doubt.  You'd have the right to the

18   assistance of counsel for your defense, appointed if necessary,

19   at trial and at every stage of the proceeding.  You'd have the

20   right to confront witnesses, to see and hear them and have them

21   cross-examined in your defense.  You'd have the right to compel

22   the attendance of witnesses at trial.  You'd have the right to

23   remain silent and decide not to testify.  If you decided not to

24   testify or put on any evidence at all, these facts could not be

25   used against you.

1          You'd also have the right to testify at a trial if you

2     chose to do so, and you'd have the right, if convicted, to

3     appeal the conviction and the jury's finding of guilt.

4          Do you understand all of these rights?

5          THE DEFENDANT:  Yes, your Honor.

6          THE COURT:  But by pleading guilty, if the court

7     accepts your plea, there will be no trial and you will have

8     given up your right to a trial as well as all the other rights

9     we just discussed.

10          Do you understand that?

11          THE DEFENDANT:  Yes, your Honor.

12          THE COURT:  You are proposing to plead guilty to the

13     crime of wire fraud.  Every crime is made up of elements or

14     parts which the government must prove beyond a reasonable

15     doubt.

16          In this case the elements the government would have to

17     prove are that you knowingly devised or participated in a

18     scheme to defraud someone by using false or fraudulent

19     pretenses, representation or promises, that the false

20     pretenses, representations or promises were about a material

21     fact, that you acted with the intent to defraud, and that you

22     transmitted or caused to be transmitted by wire some

23     communication in interstate commerce to help carry out the

24     scheme to defraud.

25          Do you understand each essential element of the

1   offense?

2           THE DEFENDANT:  Yes, your Honor.

3           THE COURT:  Do you understand that if the case had

4   gone to trial the government would have to have proven each of

5   those essential elements beyond a reasonable doubt, but when

6   you plead guilty you give up your right to have the government

7   prove each essential element beyond a reasonable doubt?

8           THE DEFENDANT:  Yes, your Honor.

9           THE COURT:  Also, you're giving up your chance to

10  argue that the government obtained the evidence improperly.

11  You can never now file a motion to suppress the evidence.

12          Do you understand that?

13          THE DEFENDANT:  Yes, your Honor.

14          THE COURT:  OK.  I understand that the parties have

15  entered into a factual basis, and I think I see your signature

16  here on page 2.

17          Did you in fact sign this factual basis?

18          THE DEFENDANT:  Yes, your Honor.

19          THE COURT:  Before you signed it, did you review each

20  and every paragraph with your attorney?

21          THE DEFENDANT:  Yes, your Honor.

22          THE COURT:  OK.  Notwithstanding, I am going to ask

23  you to listen to Mr. Diaz Espinosa now as he summarizes the

24  facts that the government says it could prove if the case had

25  gone to trial, because when he is finished, I am going to ask

1    if those facts are accurate.

2           Go ahead.

3           MR. DIAZ ESPINOSA:  Your Honor, I'm sorry.  I,

4    unfortunately, don't have a copy of the factual proffer.  I

5    provided it to you.

6           Do you mind if I come -- may I approach?

7           THE COURT:  Yes.

8           MR. DIAZ ESPINOSA:  Thanks.

9           May I proceed?

10          THE COURT:  Yes.

11          MR. DIAZ ESPINOSA:  The defendant owned Daniela

12   Rendon, P.A., a Florida LLC.

13          In the spring of 2020, Rendon, P.A.'s principal place

14   of business was the defendant's apartment in Miami, Florida.

15          On April 4, 2020, the defendant submitted an

16   electronic application for an Economic Injury Disaster Loan on

17   behalf of Rendon, P.A. to the Small Business Administration

18   causing a wire transmission from the Southern District of

19   Florida to outside the State of Florida.

20          The SBA assigned this application number 3302281940.

21          The SBA Intake Form represented that Rendon, P.A. was

22   a real estate developer, that its gross revenue from January

23   31, 2019 until January 31, 2020 were $91,976,250, and that its

24   cost of goods sold was $2 million.

25          The defendant knew that these figures were false and

1    that they could cause the SBA to issue an EIDL loan to Rendon,

2    P.A. greater than that to which it was entitled.

3          In fact, the defendant was a sales associate for A3

4    Development, LLC, for which she received biweekly checks of

5    $2,000 payable to Rendon, P.A.

6          From January 31, 2019 until January 31, 2020, deposits

7    and additions to Rendon, P.A.'s bank account totaled

8    approximately 104,994 U.S. dollars, of which approximately

9    35,835 U.S. dollars were deposited from Rendon's boyfriend or

10   the defendant's boyfriend.

11         On June 14, 2020, the defendant submitted an economic

12   EIDL intake application to the SBA for Rendon Holdings, LLC, a

13   Wyoming LLC.

14         The SBA assigned this application number 3304506233.

15         The SBA Intake Form represented that Rendon Holdings

16   did business as Rendon, P.A., that its gross revenues from

17   January 31, 2019 until January 31, 2020 were $91,976,250 and

18   its cost of goods sold was $2 million.  In fact, total deposits

19   and additions to Rendon Holdings were approximately $9,987.74.

20         The SBA denied the applications for Rendon, P.A. and

21   Rendon Holdings.

22         That concludes the factual proffer.

23         May I approach, your Honor?

24         THE COURT:  I don't need it back.  Thank you so much.

25         I want to ask Ms. Rendon, though, do you understand

```
 1    what the government says it can prove in your case?

 2             THE DEFENDANT:  Yes, your Honor.

 3             THE COURT:  You agree these facts are accurate?

 4             THE DEFENDANT:  Yes, your Honor.

 5             THE COURT:  Mr. Mandell, do you take any exception or

 6    objection to the facts as summarized?

 7             MR. MANDELL:  No, your Honor.

 8             THE COURT:  Do you stipulate that the government's

 9    factual recitation contains the essential elements of the

10    offense?

11             MR. MANDELL:  Yes, your Honor.

12             THE COURT:  Ms. Rendon, have you had enough time now

13    to consider and discuss with your attorney whether you wish to

14    plead guilty to the charge?

15             THE DEFENDANT:  Yes, your Honor.

16             THE COURT:  Mr. Mandell, is there anything I have

17    omitted to advise your client?

18             MR. MANDELL:  No, your Honor.

19             THE COURT:  Ms. Rendon, how now do you plead to the

20    charge in Count One of the indictment?  Guilty or not guilty?

21             THE DEFENDANT:  Yes, your Honor.  Guilty.

22             THE COURT:  Mr. Mandell, are you satisfied that your

23    client understands the charges and the consequences of her

24    plea?

25             THE DEFENDANT:  Yes, your Honor.
```

1          THE COURT:  Mr. Diaz Espinosa, on behalf of the

2     government, is there any reason you're aware of I should not

3     accept Ms. Rendon's plea?

4          MR. DIAZ ESPINOSA:  No reason, your Honor.

5          THE COURT:  I find the defendant is alert and

6     intelligent, that she is fully competent and capable of

7     entering an informed plea in this case, that the defendant is

8     aware of the nature of the charges and the consequences of the

9     plea and that the plea of guilty is a knowing and voluntary

10    plea supported by an independent basis in fact containing each

11    of the essential elements of the offense.

12         I also find the defendant has freely, voluntarily, and

13    intelligently entered her plea of guilty here today with no

14    promises other than those set forth in the plea agreement and

15    no threats and without any mental impediment of any kind.

16         I further find that the waiver of appellate rights is

17    a knowing and voluntary waiver made after consultation with

18    counsel.

19         In addition, I find the defendant has had the advice

20    and counsel of a competent lawyer, with whom she says she is

21    satisfied.

22         I recommend that Judge Moore accept the plea and that

23    he adjudge the defendant guilty of Count One of the indictment.

24         Ms. Rendon, let me explain what will happen now.

25         A written presentence report will be prepared by the

1    probation office to assist in sentencing.  You will be asked to

2    give information for that to the probation officer for that

3    report, and your attorney may be present for that interview if

4    you wish.  If you have any specific requests for treatment

5    modalities or place of incarceration, please do it during the

6    PSAI.

7                You and your attorney will have the right to read the

8    presentence report and file any objections to it prior to the

9    sentencing hearing.  You and your attorney will have the right

10   to speak on behalf of you at the sentencing hearing.  If there

11   are any victims of the offense, the victims will have the

12   opportunity to be heard at the sentencing hearing.

13               I will now refer you to the probation office for the

14   preparation of the presentence investigation report.

15               Counsel, this sentencing will be set by separate

16   order.  If either of you anticipate needing more than 30

17   minutes for the sentencing hearing, please let Judge Moore's

18   chambers know so that he can schedule it accordingly.

19               A written report and recommendation will follow

20   recommending that Judge Moore accept your plea of guilty.  The

21   parties will have 14 days to file objections.  The failure to

22   object will waive your right to challenge on appeal the

23   district court's order based on unobjected-to factual or legal

24   conclusions.

25               Counsel, I think that that is all for Ms. Rendon,

1    unless, Mr. Diaz Espinosa, there is anything else on behalf of

2    the government.

3              MR. DIAZ ESPINOSA:  Nothing further, your Honor.

4              THE COURT:  No objection to her remaining on bond

5    pending sentencing?

6              MR. DIAZ ESPINOSA:  No objection.

7              THE COURT:  OK.  Mr. Mandell, anything else on behalf

8    of your client?

9              MR. MANDELL:  No, your Honor.

10             THE COURT:  Ms. Rendon, it is my practice to always

11   caution a defendant who following the change-of-plea hearing

12   remains on bond of two things.

13             The first is that you are still on bond and all of the

14   conditions of your bond are still in place, and the violation

15   of any of those conditions will result in the immediate

16   issuance of a warrant for your arrest, for which there probably

17   won't be another bond on the other side.  So please continue to

18   closely adhere to any conditions of the bond that you have been

19   on.  They are still in place, and it is important, for example,

20   it is important to attend the sentencing hearing when it is

21   noticed.

22             The other thing, though, that I always tell my

23   defendants is that the same might not be true at the

24   sentencing.  In fact, the order setting the sentencing hearing

25   may even include language that cautions you that you should be

1    prepared to be remanded into the marshal's custody at that

2    time.  I don't know, but you should prepare yourself between

3    now and then for the possibility that you could be remanded or

4    taken into custody at the time of sentencing.  So it is a very

5    good time to get affairs into order and be cognizant of that

6    possibility.  OK.

7              THE DEFENDANT:  Will do, your Honor.

8              THE COURT:  OK.  Ms. Rendon, good luck to you.

9              Your next appearance will be in front of Judge Moore.

10             I am going to leave the able-bodied counsel in this

11   courtroom to deal with Ms. Williams about which version of the

12   factual proffer or plea agreement will be uploaded.  OK.

13             All right.  We are adjourned.

14             MR. DIAZ ESPINOSA:  Understood.  Thank you, your

15   Honor.

16             MR. MANDELL:  Thank you, your Honor.

17             (Adjourned)

18

19

20

21

22

23

24

25

C E R T I F I C A T E


        I hereby certify that the foregoing is an accurate

transcription to the best of my ability of the digital audio

recording in the above-entitled matter.


September 26, 2023        s/ Joanne Mancari
                          Joanne Mancari, RPR, CRR, CSR
                          Court Reporter
                          jemancari@gmail.com